**FILED**

JUN 13 2005
At_____M
STEPHEN R. LUDWIG, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| PATRICIA SPOLJORIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) CASE NO. | 2 : 0 5 C V 2 3 4 |
| HINSHAW & CULBERTSON, LLP, an | ) | |
| Illinois Limited Liability Partnership, and | ) | |
| LAWRENCE R. MOELMANN, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Patricia Spoljoric, Plaintiff, by counsel Smith & DeBonis, LLC by Anthony DeBonis, Jr., for her complaint against the Defendants Hinshaw & Culbertson, LLP and Lawrence R. Moelmann, Defendants, states as follows:

#### A.    Preliminary Statement

1.    This is an action to recover for the wrongful acts of the Defendants under the laws of the State of Indiana in connection with estate planning and related legal services provided to the Plaintiff's late mother, Doris Levenberg ('Doris"). As stated more completely below, the defendants and each of them failed to implement the estate plan goals and intentions of Doris to see that her home in Porter County, Indiana was conveyed to the Plaintiff upon her death, and concealed this fact from Doris and the Plaintiff. Plaintiff seeks compensatory and punitive damages, costs and attorney fees.

#### B.    Jurisdiction and Venue

2.    This Court has jurisdiction of this case pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest

and costs, and is between citizens of different States. Venue of this cause in this District is proper pursuant to 28 U.S.C. §1391(a) (2) in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of this action is situated in this District.

### C.  Parties

3.      Plaintiff Patricia Spoljoric ("Patricia") is an adult resident of Porter County, Indiana and is the natural daughter of Doris Levenberg, now deceased.   Years prior to her death on March 26, 2004 at age 79, Doris became disabled in an accident, and Patricia lived with and cared for Doris at Doris' home in Porter County, Indiana.

4.      Defendant Hinshaw & Culbertson, LLP ("Hinshaw") is an Illinois limited liability partnership admitted to do business in the State of Indiana. Its principal place of business is located in Chicago, Cook County, Illinois, and, during all times pertinent to this matter, maintained an office in Schererville, Indiana. Hinshaw is a law firm that offers legal services in Indiana, including construction law services, estate planning and probate services.

5.      Defendant Lawrence R. Moelmann ("Moelmann") is an attorney licensed to practice in the State of Illinois, and, during all times relevant to this matter, was a partner in Hinshaw. Moelmann is a resident of the State of Illinois. He provided legal services to Doris in connection with the construction of her home in Porter County, Indiana and in connection with the implementation of her estate plan.

2

## D.    Grounds for Relief

6.    Doris constructed a large home on a parcel of real estate located in Porter County, Indiana and was advised as to construction legal matters by the Defendants with whom Doris had an attorney-client relationship since 2000.

7.    In January of 2000, after construction of the home was completed, Doris engaged Hinshaw and Moelmann to prepare those documents necessary to assure that Patricia would succeed to the sole ownership of the home upon Doris' death.

8.    Pursuant to this engagement, Defendants reviewed Doris' Will and her Revocable Trust Agreement ("Revocable Trust") which had been prepared by other counsel in 1996. Defendants prepared a First Amendment to the Revocable Trust Agreement which had the effect of changing trustees of the trust. This Amendment was signed on January 31, 2000.

9.    The Defendants thereafter met with Doris and were directed by her to make certain that her estate plan provided that the Plaintiff succeed to the sole ownership of Doris' home. In accordance with this direction, Defendants prepared and Doris, for herself, and Patricia, as trustee, executed The Doris Levenberg Qualified Personal Residence Trust ("QPRT") on August 4, 2000. Defendants also prepared a Codicil to the Will of Doris Levenberg ("Codicil"), which was executed by Doris on the same day.

10.    Under the QPRT, Doris declared her intention to place the residence in the separate trust created there under, and stated to whom the real estate was then to be distributed, as follows:

> If the trust terminates on my death, to any one or more persons,
> organizations, and my estate as I appoint by Will, specifically referring to

3

this power of appointment. Any principal not effectively appointed by me shall be distributed to my estate.

QPRT, §3.3(a), pp. 1-2.

The QPRT is attached as Exhibit A.

11.    In the Codicil, Doris exercised this power of appointment as follows:

If the Doris Levenberg Personal Residence Trust terminates because of my death, then I appoint the balance of such trust to my daughter, Patricia Spoljoric, if she survives me, and if not, then to the descendants of Patricia Spoljoric then surviving, per stirpes. This paragraph shall be deemed to be an adequate reference to the power granted under Paragraph 3.3(a) of the Doris Levenberg Personal Residence Trust.

Codicil, ¶1, p. 1.

The Codicil is attached as Exhibit B.

12.    From the time of execution of the QPRT and Codicil on August 4, 2000, until the death of Doris in March of 2004, the Defendants failed to see to the conveyance of Doris' home into the QPRT as required by Doris' direction and estate plan.

13.    Without such conveyance, the home would pass by Article II of Doris' will as part of the estate residue to the Revocable Trust, the beneficiaries of which are Patricia as to two shares (50%), and Doris' other children, Corie Wilcox, one share (25%) and Leslie Schmick, one share (25%). Therefore, a failure to convey Doris' residence into the QPRT would cause Patricia to be deprived of ownership of 50% of the value of Doris home.

14.    In June of 2002, Moelmann prepared a quit-claim deed conveying an undivided one-half interest in Doris' home to Patricia. Moelmann brought the deed to Doris' home and obtained her signature upon it. At that time, Moelmann acknowledged

4

that it was Doris' desire to convey her interest in the residence to Patricia in recognition of all that Patricia had done for Doris, and to minimize federal estate taxes. Moelmann represented to Doris that this conveyance was consistent with Doris' estate plan.

15.     Patricia herself had an attorney-client relationship with Moelmann through December of 2004. She consulted with Moelmann concerning her own will. At no time did Moelmann or anyone else at Hinshaw reveal to Patricia that the home had never been placed into the QPRT, that the undivided ownership interest in the home which was not conveyed to Patricia in 2002 would pass under the Will and Revocable Trust to be shared by Patricia, Corie Wilcox and Leslie Schmick, not to Patricia alone, and that the conveyance of the one-half interest to Patricia in 2002 did not itself carry out Doris' express intention that Patricia and Patricia alone succeed to the ownership of Doris' residence.

16.     At all times pertinent to this matter, the Defendants and each of them owed to Doris, and those who are Doris' beneficiaries, including Patricia, the duty to

        a.     carry out the intentions of Doris for the disposition of her property after death by preparing estate planning documents fully consistent with such intentions;

        b.     examine and review the existing estate planning documents of Doris, to ascertain Doris' intentions for the disposition of her property and to make certain that such intentions are realized through all advice and documents prepared;

        c.     to disclose to their clients Doris and Patricia any and all legal matters or consequences which would reasonably result from any conveyance and disposition of

Doris' property, particularly if such conveyance might result in consequences contrary to the expressed intention of Doris;

    d.    to exercise that degree of care and skill which a reasonably skilled and prudent attorney practicing in the same field in the State of Indiana would exercise under similar circumstances.

## E.    Causes of Action

17.    The Defendants breached their duties as described in the preceding paragraph by failing to obtain the transfer of Doris' residence to the QPRT, thereby also failing to carry out Doris' intentions to leave her home solely to Patricia.

18.    The Defendants further breached said duties by failing to see to the conveyance of the undivided one-half of Doris home remaining in Doris' name after June of 2002 to the Plaintiff, or to advise Doris or to amend the documents comprising the estate plan of Doris to carry out her intention that Patricia succeed to sole ownership of the home.

19.    The Defendant Moelmann owed Doris and Patricia a fiduciary duty to disclose all facts and issues which he knew or should have known would have violated or conflicted with Doris' estate plan intention to leave her home solely to Patricia. Moelmann violated this duty and fraudulently concealed his failure to carry out Doris' intentions as to the disposition of her residence solely to Patricia despite his attorney-client relationship with Doris through her death in March 2004 and his attorney client relationship with Patricia through December of 2004. This conduct was outrageous, and constituted an attempt to cover-up the defendants negligence and breaches of duty.

6

20.     As a result of Moelmann's and Hinshaw's breaches of duty as outlined above, Doris was deprived of the opportunity to have her estate planning documents carry out her intention to leave her home solely to Patricia, and Patricia has been and will be deprived of the ownership of a 25% interest in the former residence of Doris.

### F.     Prayer for Relief

WHEREFORE, the Plaintiff prays for judgment in this cause and that the Court:

a.      Enter an award of compensatory damages in an amount sufficient to compensate the Plaintiff for the harm suffered by reason of the above-described acts or omissions of the Defendants;

d.      Enter judgment against the Defendants for punitive damages in an amount to be established at trial for the purpose of deterring the Defendants' fraudulent and outrageous conduct;

e.      Award Plaintiff attorney fees and other costs and expenses of litigation; and

f.      All other just and proper relief.

### JURY DEMAND

Plaintiff demands trial by jury.

ANTHONY DeBONIS, JR.
Attorney No. 4442-45
SMITH & DeBONIS, LLC
9696 Gordon Drive
Highland, IN 46322
(219) 922-1000

*Attorney for Plaintiff Patricia Spoljoric*

7

## THE DORIS LEVENBERG QUALIFIED PERSONAL RESIDENCE TRUST

I, DORIS LEVENBERG, have transferred to PATRICIA SPOLJORIC, as trustee, a personal residence described in the attached schedule to the trust. The trustee shall hold the property in a separate trust known as the "Residence Trust."

## Article 1
## Name of Trust

The name of this trust shall be THE DORIS LEVENBERG QUALIFIED PERSONAL RESIDENCE TRUST.

## Article 2
## Trusts Irrevocable

This instrument and the trusts established hereunder are irrevocable.

## Article 3
## The Residence Trust

3.1 **Use of Personal Residence.** Until the termination of the Residence Trust, I shall have the right to the use of the personal residence held by the trustee and shall pay all expenses incident to the ordinary maintenance of the personal residence.

3.2 **Distributions to Me.** The trustee shall distribute to me, at least quarterly, all of the income of the Residence Trust and that portion of the Residence Trust that the trustee determines to consist of cash in excess of permitted amounts.

3.3 **Termination of Residence Trust.** As long as the personal residence continues to be used or held for use as my personal residence, the Residence Trust shall terminate upon the first to occur of (a) the expiration of a term of five years from the date of this instrument (the "fixed term") and (b) my death. Upon such termination, the trustee shall pay any accrued or unpaid income to me, if living, or if not, to my estate. The trustee shall distribute the principal (other than proceeds from sale or insurance) as follows:

  (a) **On My Death.** If the trust terminates on my death, to any one or more persons, organizations, and my estate as I appoint by Will, specifically

# EXHIBIT __A__

762658/666391.1-HC01_DS2A

referring to this power of appointment. Any principal not effectively appointed by me shall be distributed to my estate.

(b) **At End of Fixed Term.** If the Residence Trust terminates at the end of the fixed term, (1) any cash or other nonresidence assets to me, and (2) the balance of the remaining principal to PATRICIA SPOLJORIC, provided that if PATRICIA SPOLJORIC is not then living, then to her descendants then surviving, *per stirpes*..

3.4 **Sale of or Destruction to Personal Residence.** The trustee may sell any personal residence and hold the proceeds in a separate account for a period not to exceed two years from the date of sale. The trustee may hold the proceeds of insurance paid to the trustee as a result of damage to or destruction of the personal residence in a separate account for a period not to exceed two years from the date of destruction. If the Residence Trust is holding the proceeds from the sale of a personal residence or insurance, then proceeds not used to purchase a new personal residence (or repair or replace the existing personal residence, as the case may be) shall either be converted to and held for the balance of the fixed term in a separate trust meeting the requirements of a qualified annuity interest, or be distributed to me, as the trustee determines. The trustee shall make the conversion or distribution within 30 days of the first to occur of (a) the date that is two years after the date of sale or receipt of the insurance proceeds, (b) the end of the fixed term, or (c) the date on which a new personal residence is acquired (or repairs to or replacement of the existing personal residence are made, as the case may be) by the trust.

3.5 **Termination of Residence Trust when Residence Ceases Being Used as a Personal Residence.** Except to the extent proceeds from the sale of or collection of insurance from the personal residence are being held in a separate account, if during the term of the Residence Trust the personal residence held by the trustee ceases to be used or held for use as my personal residence (including due to damage or destruction rendering the personal residence unusable as a personal residence), then the Residence Trust shall either be converted to or held for the balance of the fixed term in a separate trust meeting the requirements of a qualified annuity interest or be distributed to me, as the trustee determines.

## Article 4
## Grantor Retained Annuity Trust

If the trustee converts any portion of the Residence Trust to a separate trust meeting the requirements of a qualified annuity interest, then the trustee shall hold

2

that portion, including any income generated therefrom, as a separate annuity trust (the "Annuity Trust"), as follows:

**4.1 Payment of Annuity Amount.** The trustee shall pay to me in each taxable year of the Annuity Trust the annuity amount. The annuity amount shall be paid in equal quarterly installments from the income of the Annuity Trust, and to the extent the income is insufficient, from the principal of the Annuity Trust, with the first payment to be made on the required creation date for the Annuity Trust, provided, however, that payments may be deferred until 30 days after the assets are converted to a qualified annuity interest, and provided further, however, that the deferred payments shall include interest computed as of the required creation date of the trust, at a rate equal to the Code Section 7520 rate in effect at the required creation date. The required creation date for the Annuity Trust shall be on the date of sale of the personal residence, the date of damage to or destruction of the personal residence, or the date on which the personal residence ceases to be used or held for use as a personal residence, as the case may be.

**4.2 Annuity Amount.** The annuity amount shall be determined by dividing the lesser of the value of all interests retained by me, as of the date of the original transfer or transfers to the Residence Trust, or the value of all the trust assets as of the required creation date, by an annuity factor determined (a) as of the date of the original transfer, using the rate determined under Code Section 7520 as of such date, and (b) for the original term of my interest. To the extent permitted under the regulations, the annuity amount shall be adjusted in the event that only a portion of the proceeds of the sale of (or insurance proceeds from) the personal residence becomes subject to the Annuity Trust.

**4.3 Fair Market Value of Property Subject to Annuity Trust and Adjustments.** If the fair market value is incorrectly determined pursuant to the preceding paragraph, then within a reasonable period after the value is finally determined for federal tax purposes, the trustee shall pay to me, in the case of underpayment, or receive from me, in the case of overpayment, an amount equal to the difference between the annuity amounts properly payable, plus interest, compounded annually, for the underpayment or over-payment period at the interest rate that the regulations under Code Section 7520 prescribe for the computation period, and the annuity amount actually paid, plus interest compounded annually, for the same period at the same rate.

**4.4 Short Taxable Year.** In determining the annuity amount, the trustee shall prorate the same on a daily basis for a short taxable year and for the taxable year in which my interest terminates.

3

762658/666391.1-HC01_DS2A

**4.5 Additional Contributions Prohibited.** No additional contributions shall be made to the Annuity Trust.

**4.6 The Termination of Annuity Trust.** The Annuity Trust shall terminate on the first to occur of (a) the expiration of the fixed term and (b) my death. On such termination, the remaining principal and income, after the payment of any pro rated annuity amounts due to me or my estate, hereinafter referred to as the "balance of the trust," shall be disposed of as follows:

(a) If the Annuity Trust terminates on my death, the trustee shall distribute to my estate a fractional share of the balance of the trust, the numerator of which is the value of the balance of the trust included in my gross estate for federal estate tax purposes and the denominator of which is the value of the balance of the trust as finally determined for federal estate tax purposes (or consistent with the valuation of the assets included in my estate), and shall distribute the remaining fractional share of the balance of the trust to PATRICIA SPOLJORIC, provided, however, that if PATRICIA SPOLJORIC is not then living, then the share that would have been distributed to her had she then been living shall be distributed to her descendants then surviving, per stirpes.

(b) If the Annuity Trust terminates on the expiration of the fixed term, the trustee shall distribute the balance of the trust to PATRICIA SPOLJORIC, provided, however, that if PATRICIA SPOLJORIC is not then living, then the trust shall be distributed to PATRICIA SPOLJORIC's descendants then surviving, per stirpes.

## Article 5
## Trustee Succession

**5.1 Resignation.** A trustee may resign at any time by signed notice to the co-trustees, if any, and to me, or if I am not then living, to the income beneficiaries.

**5.2 Individual Trustee Succession.** Each acting individual trustee (unless limited in the instrument in which the trustee was designated) may, by signed instrument filed with the trust records, (1) designate one or more individuals (other than me) or qualified corporations to act with or to succeed the trustee consecutively or concurrently, in any stated combination and on any stated contingency, and (2) amend or revoke the designation before the designated trustee begins to act.

4

5.3 **Default of Designation.** If at any time no trustee is acting and no designated trustee is able and willing to act, then the first of the following who is able and willing to act shall be trustee:

    (a) David Spoljoric

    (b) Blaise Spoljoric

## Article 6
### Trustee Actions

6.1 **Control.** Except as otherwise provided, whenever more than one trustee is acting, the "trustee" means all trustees collectively, and a majority of the trustees qualified to participate in an action or decision of the trustees shall control. Any trustee who is not qualified to participate in or dissents from such action or decision shall not be liable therefor.

6.2 **Accountings.** Upon written request, the trustee shall send a written account of all trust receipts, disbursements, and transactions, and the property comprising the trust to each income beneficiary, and at the option of the trustee, to the future beneficiaries of the trust. A future beneficiary of a trust is a person to whom the assets of the trust would be distributed or distributable if the trust then terminated. Unless court proceedings on the account are commenced within three months after the account is sent, the account shall bind and be deemed approved by all of the following beneficiaries who have not filed written objections to the account with the trustee within three months after the account is sent, and the trustee shall be deemed released by all such beneficiaries from liability for all matters covered by the account as though such account was approved by a court of competent jurisdiction: (a) each beneficiary to whom the account was sent, and (b) if the account was sent to all income and future beneficiaries of the trust, then all beneficiaries of the trust who have any past, present, or future interest in the matters covered by the account.

6.3 **Trustee's Right to Account Settlement Before Distribution.** Before distribution of any trust principal, the trustee shall have the right to require settlement of any open accounts of the trust from which the distribution is being made, either by the written approval and release of all beneficiaries having an interest in the distribution or, if the releases cannot be obtained, by court settlement of the open accounts. All of the trustee's reasonable fees and expenses (including attorneys' fees) attributable to approval of the trustee's accounts shall be paid by the trust involved.

5

762658/666391.1-HC01_DS2A

**6.4 Acceptance of Predecessor's Accounts.** On the signed direction of the income beneficiaries the trustee shall accept without examination the accounts rendered and property delivered by or for a predecessor trustee. Such acceptance shall fully discharge the predecessor trustee, and shall bind all beneficiaries.

**6.5 Notice.** If a beneficiary is under legal disability, the trustee shall give any notice or accounting to the beneficiary's personal representative, if any, and if none, to a parent of the beneficiary, if any, and if none, to any person whom the trustee believes has demonstrated concern for the interest of the beneficiary. That person may sign any instrument for the beneficiary.

**6.6 Special Trustees.** If the trustee (the "principal trustee") is unable or unwilling to act as trustee as to any property, such person (other than me) or qualified corporation as the principal trustee shall designate by signed instrument shall act as special trustee as to that property. Any special trustee shall have the powers granted to the principal trustee under this instrument, to be exercised with the approval of the principal trustee. Net income and any proceeds of sale shall be paid to the principal trustee, to be administered under this instrument. The principal trustee may remove and replace the special trustee at any time.

**6.7 Delegation to Co-Trustee.** Any individual trustee may delegate any or all of that trustee's powers and duties to a co-trustee, except that no trustee shall be permitted to delegate any discretion with respect to the distribution of income or principal to a beneficiary. Any delegation may be for a definite or indefinite period and may be revoked by the delegating trustee. Any delegation or revocation shall be in writing, signed by the delegating trustee and delivered to the co-trustee to whom the delegation is made. Any person or institution may rely on the written certification of a co-trustee that such co-trustee has the power to act without concurrence of any other trustee, provided, however, that the co-trustee shall attach to the written certification a copy of the instrument by which the powers and duties have been delegated.

**6.8 Compensation.** The trustee shall be entitled to reimbursement for expenses and to reasonable compensation.

**6.9 Determinations by Trustee.** The trustee's reasonable determination of any question of fact shall bind all persons.

**6.10 Third-Party Dealings.** The trustee's certification that the trustee is acting according to this instrument shall protect anyone dealing with the trustee. No one need see to the application of money paid or property delivered to the trustee.

762658/666391.1-HC01_DS2A

6.11 **Exoneration of Trustee.** Any individual trustee acting in good faith shall not be liable for any act or omission. No trustee shall be liable for any act or omission of another trustee.

6.12 **Bond.** No trustee need give bond, qualify before, or account to any court.

6.13 **Powers of Successor Trustee.** Unless expressly limited, each successor trustee shall have all the titles, powers, duties, discretions, and immunities of the original trustee.

## Article 7
### Trustee's Powers

7.1 **Powers Generally.** Except as otherwise provided in this instrument and except to the extent the exercise of such power is contrary to the requirements of Code Section 2702(a) and Treas. Reg. •·25.2702-5(c), the trustee shall have, in addition to all powers granted by law, the following powers, to be exercised in a fiduciary capacity:

7.2 **Retention.** To retain any property transferred to the trustee, regardless of diversification and regardless of whether the property would be considered a proper trust investment;

7.3 **Sale.** To sell at public or private sale, contract to sell, grant options to buy, convey, transfer, exchange, or partition any real or personal property of the trust, for such price and upon such terms as the trustee sees fit;

7.4 **Real and Tangible Personal Property.** To make leases and subleases and grant options to lease, although the terms thereof commence in the future or extend beyond the termination of any trust; to purchase, operate, maintain, improve, rehabilitate, alter, demolish, abandon, release, or dedicate any real or tangible personal property; and to develop or subdivide real property, grant easements, and take any other action with respect to real or tangible personal property that an individual owner thereof could take;

7.5 **Borrowing.** To borrow money from any lender, extend or renew any existing indebtedness, and mortgage or pledge any property in the trust;

7.6 **Investing.** To invest in bonds, common or preferred stocks, notes, options, common trust funds, mutual funds, shares of any investment company or trust, or other securities, life insurance, partnership interests, general or limited, joint

762658/666391.1-HC01_DS2A

ventures, real estate, or other property of any kind, regardless of diversification and regardless of whether the property would be considered a proper trust investment;

**7.7 Joint Investments; Distribution; Determination of Value.** To make joint investments for two or more trusts held by the same trustee; to distribute property in cash or in kind, or partly in each; to allocate or distribute undivided interests or different property or disproportionate interests to the beneficiaries, and to determine the value of any property so allocated or distributed; but no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for federal income tax purposes, and no action taken by the trustee pursuant to this paragraph shall be subject to question by any beneficiary;

**7.8 Rights as to Securities.** To have all the rights, powers, and privileges of an owner of the securities held in trust, including, but not limited to, the powers to vote, give proxies, and pay assessments; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations and, incident to such participation, to exercise or sell stock subscription or conversion rights;

**7.9 Conservation of Assets.** To take any action that an individual owner of an asset could take to conserve or realize the value of the asset and with respect to any foreclosure, reorganization, or other change with respect to the asset;

**7.10 Delegation.** To employ agents, attorneys, and proxies of all types (including any firm in which a relative of mine or his or her spouse is a partner, associate, employee, or is otherwise affiliated) and to delegate to them such powers as the trustee considers advisable;

**7.11 Payment of Expenses and Taxes.** To pay all expenses incurred in the administration of the trust, and to pay all taxes imposed on the trust;

**7.12 Determination of Principal and Income.** To determine in cases not covered by statute the allocation of receipts and disbursements between income and principal, except that (a) reasonable reserves for depreciation, depletion, and obsolescence may be established out of income and credited to principal only to the extent that the trustee determines that readily marketable assets in the principal of the trust will be insufficient for any renovation, major repair, improvement, or replacement of trust property that the trustee deems advisable; and (b) any premium paid for interest-bearing debt obligations shall be amortized out of income;

8

**7.13 Dealings with Fiduciaries.** To deal with, purchase assets from, or make loans to the fiduciary of any trust made by me or a trust or estate in which any beneficiary under this trust has an interest, even though a trustee under this instrument is the fiduciary, and to retain any assets or loans so acquired, regardless of diversification and regardless of whether the property would be considered a proper trust investment; to deal with a corporate trustee under this instrument individually or a parent or affiliate company; to deal with the fiduciary of any other estate, trust, or custodial account, even though the fiduciary is a trustee under this instrument;

**7.14 Compromising Claims.** To litigate, compromise, settle, or abandon any claim or demand in favor of or against the trust;

**7.15 Nominee Arrangements.** To hold any asset in the name of a nominee, in bearer form or otherwise, without disclosure of any fiduciary relationship;

**7.16 Liability Insurance.** To purchase liability and casualty insurance of any kind for the protection of the trust estate, including comprehensive liability insurance;

**7.17 Environmental Matters.** To inspect and monitor businesses and real property (whether held directly or through a partnership, corporation, trust, or other entity) for environmental conditions or possible violations of environmental laws; to remedy environmentally damaged property or to take steps to prevent environmental damage in the future even if no action by public or private parties is currently pending or threatened; to abandon or refuse to accept property that may have environmental damage; to expend trust property to do the foregoing, and no action or failure to act by the trustee pursuant to this paragraph shall be subject to question by any beneficiary;

**7.18 Permitted Amounts.** As to the Residence Trust, to retain in a separate account that amount of cash permitted to be held under Treas. Reg. •·25.2702-5. That amount may not be in excess of the amount required (a) for payment of trust expenses (including mortgage payments, if any) already incurred or reasonably expected to be paid by the trust within six months of the receipt of the cash by the trustee; (b) for improvements to the personal residence to be paid within six months of the receipt of the cash by the trustee, provided that any improvement to the personal residence must satisfy the requirements of a personal residence; and (c) for the purchase of a personal residence within the next three months of the date of this agreement or for the purchase of a personal residence within three months of receipt of the cash by the trustee if the trustee has previously entered

9

into a contract to purchase the personal residence. The amount of cash that can be held in the Residence Trust is referred to as the permitted amounts; and

**7.19 Ability To Take Other Actions.** To do all other acts to accomplish the proper management, investment and distribution of the trust.

### Article 8
### Administrative Provisions

**8.1 Income Payments.** Mandatory income payments shall be made at least quarterly.

**8.2 Facility of Payment.** The trustee may make any payments (other than distributions on termination) to a beneficiary under legal disability or who the trustee determines to be unable to properly manage his or her affairs in any of the following ways: (a) to the legally appointed guardian of the beneficiary, (b) to an adult relative or friend of the beneficiary in reimbursement for proper expenditures on behalf of the beneficiary, (c) to a custodian for the beneficiary under a Uniform Transfers or Gifts to Minors Act, (d) by making direct expenditures for the benefit of the beneficiary, or (e) to the beneficiary directly. The trustee may make distributions of tangible personal property to a beneficiary under legal disability or who the trustee determines to be unable to properly manage his or her affairs in any of the ways listed in paragraphs (a), (c), or (e) above.

**8.3 Spendthrift.** No interest under this instrument shall be assignable by any beneficiary or be subject to the claims of his or her creditors, including claims for alimony or separate maintenance. The preceding sentence shall not be construed as restricting in any way the exercise of any right of withdrawal or power of appointment or the ability of any beneficiary to release his or her interest.

**8.4 Accrued and Undistributed Income.** Except as otherwise specifically provided, upon the death of any beneficiary, any accrued or undistributed income shall be paid as income to the next beneficiary succeeding in interest.

**8.5 Controlling Law.** The validity and effect of each trust and the construction of this instrument and of each trust shall be determined in accordance with the laws of Illinois. The original situs and original place of administration of each trust shall also be Illinois, but the situs and place of administration of any trust may be transferred at any time to such place as the trustee determines to be for the best interests of the trust.

762658/666391.1-HC01_DS2A

### Article 9
### Qualifications and Prohibitions

**9.1 Qualification Under Code Section 2702(b).** If the annuity trust is created under this instrument, I intend to create an annuity trust in which I retain a qualified interest, as defined in Code Section 2702(b), and this instrument shall be so interpreted. The trustee shall perform all acts necessary to insure compliance with said Code Section and any applicable regulation issued thereunder. No trustee or other person shall have any power that would disqualify this trust under Code Section 2702 or any applicable regulation issued thereunder.

**9.2 Qualification Under Code Section 2702 (a).** I intend to create a qualified personal residence trust, as defined in Code Section 2702(a), and this instrument shall be so interpreted. The trustee shall perform all acts necessary to insure compliance with said Code Section and any applicable regulation issued thereunder. No trustee or other person shall have any power that would disqualify this trust under Code Section 2702 or any applicable regulation issued thereunder.

**9.3 Ensuring Qualification.** This instrument and the trusts established hereunder are unamendable, except the the trustee shall have the power to amend this trust by signed instrument solely to ensure that, within the meaning of Code Section 2702, the Annuity Trust qualifies and continues to qualify as an annuity trust and the Residence Trust qualifies and continues to qualify as a qualified personal residence trust.

**9.4 Repurchase of Residence Prohibited.** The trustees shall not sell or transfer the residence, directly or indirectly, to the grantor, the grantor's spouse, or an entity controlled by the grantor or the grantor's spouse.

**9.5 Prohibited Distributions.** Prior to the termination of the Residence Trust and Annuity Trust, no income or principal of those trusts shall be distributed to or for the benefit of any person other than me.

**9.6 Retention of Personal Residence.** Except as otherwise provided, during the term of the Residence Trust, the trustee is prohibited from holding any asset in that trust other than one residence to be used or held for use as a personal residence by me.

**9.7 Payments for Tax Liability.** The trustee may pay to me or my executor such amounts as I or my executor certify in writing to the trustee are required to discharge my tax liability (whether federal, state, or otherwise) in respect of

11                    762658/666391.1-HC01_DS2A

income and gains realized by the annuity trust that are taxable to me and not distributed to me. However, the trustee shall not make the payment if it would disqualify the annuity trust as an annuity trust under Code Section 2702. To the extent any provision of state law requires the trustee to make such distributions or permits me to require the trustee to make such distributions, I expressly waive the benefit of such provision of state law.

**9.8 Commutation.** The commutation of my interest under this trust agreement is prohibited.

**Article 10**
**Definitions**

**10.1 Code.** References to Sections of the "Code" refer to the Internal Revenue Code of 1986, as amended from time to time, and include corresponding provisions of subsequent federal tax laws.

**10.2 Regulations.** "Applicable regulation" or "regulation" means any regulation issued under Code Section 2702.

**10.3 Qualified Interest.** "Qualified interest" shall have the same meaning as determined for purposes of Code Section 2702.

**10.4 Incapacity.** A person shall be considered incapacitated if under a legal disability or unable to give prompt and intelligent consideration to financial affairs. The existence of the inability may be determined by a physician, and any person may rely upon written notice of the determination. An incapacitated trustee shall be unable to act.

**10.5 Income Beneficiary.** An "income beneficiary" means a person to whom or for whose benefit income (including annuity payments) of any trust is or may be currently distributed.

**10.6 Children.** "Children" means a child of mine who is living at the time of execution of this trust but does not include children born or adopted by me after the execution of this instrument.

**10.7 Personal Residence.** "Personal residences" means my principal residence within the meaning of Code Section 1034, one other residence of mine within the meaning of Code Section 280A(d)(1) (without regard to 280A(d)(2)), or an undivided fractional interest in either.

12

## Article 11
### Captions and Context of Terms

Captions shall have no impact or meaning as to the terms of the document. Singular and plural and masculine, feminine, and neuter shall be interchangeable as required or permitted in the context of this instrument.

Signed and agreed on _August 4 2000_, and the trustee acknowledges receipt of the assets described in the attached Schedule.

DORIS LEVENBERG, individually

_Doris Levenberg_

PATRICIA SPOLJORIC, Trustee

_Patricia Spoljoric_

13

762658/666391.1-HC01_DS2A

STATE OF _Ind_      )
                    )
COUNTY OF _____   )

On _August 4, 2000_____, DORIS LEVENBERG personally appeared before me and acknowledged that this instrument was executed as such person's free act and deed.

_Lisa F. Piroski_
Notary Public

This document was prepared by:

    Richard C. Ernst, Hinshaw & Culbertson, 4343 Commerce Court, Lisle, IL 60532

### Schedule to Client Qualified Personal Residence Trust

Real Estate commonly known as 219 Crabapple Lane, Valparaiso, Indiana, and legally described on the rider attached hereto, as follows:

14

# CODICIL
## TO THE
## WILL OF DORIS LEVENBERG

I, Doris Levenberg, make this codicil to my Will dated January 22, 1996.

1.    Paragraph 3 of Article II is deleted and replaced by the following:

"I give all of my gold and diamond jewelry to my daughter, Patricia Spoljoric, if she survives me.  I give all my silver and turquoise jewelry to my daughter, Leslie Schmick, if she survives me.  I give all of the rest of my jewelry to Corie Wilcox, if he survives me.  I give my automobile (or if I own more than one at the time of my death, then her choice) to my daughter, Patricia Spoljoric, if she survives me."

I give all my household furnishings and furniture to my daughter Patricia Spoljoric, if she survives me, and if not, then to her descendants surviving at my death, per stirpes.

If the Doris Levenberg Personal Residence Trust, dated August 4, 2000, terminates because of my death, then I appoint the balance of such trust to my daughter, Patricia Spoljoric, if she survives me, and if not, then to the descendants of Patricia Spoljoric then surviving, per stirpes.  This paragraph shall be deemed to be an adequate reference to the power granted under Paragraph 3.3(a) of the Doris Levenberg Personal Residence Trust.

762658/666390.1-HC01_DS2A

# EXHIBIT __B__

2.   I add the following new Article V, as follows:

ARTICLE V

"If any beneficiary of this will brings an action, at law or in equity, based on a claim that this will or any provision of it was made by me based on fraud, duress, undue influence, coercion or restraint, or based on any lack of my capacity, or any similar claim, and if successful such action would have the effect of enlarging that beneficiary's share of my estate, then this will shall be administered and distribution of my estate shall be made as if such beneficiary predeceased me."

3.   "American National Bank" where those words appear in Article III and paragraph 1 of Article IV are deleted and replaced by, "Bank of America, N.A."

In all other respects, I confirm and republish my will dated January 22, 1996.

I have signed this codicil on this __4th__ day of __August__, 2000.

_____Doris Levenberg_____
Doris Levenberg

We, certify that in our presence on the date appearing above Doris LEVENBERG (name) signed the foregoing instrument and acknowledged it to be the Codicil to her Will dated January 22, 1996,

2

2000, that at her request, and in her presence and in the presence of each other, we have signed our names below as witnesses, and that we believe her to be of sound mind and memory.

_Lawrence R. Nachmann_ residing at _841 CRESCENT DRIVE_
_GLEN ELLYN, IL 60137_

_Lisa L. Paraska_ residing at _2019 Westpark_
_Whiting, In, 46394_

_Andrea Greene_ residing at _1432 Warwick_
_Whiting, IN 46394_


        Under penalties of perjury, we, the undersigned testator and the undersigned witnesses, respectively, whose names are signed to the attached or foregoing instrument declare:

        (1)     that the testator executed the instrument as the testator's codicil;

        (2)     that, in the presence of both witnesses, the testator signed or acknowledged the signature already made or directed another to sign for the testator in the testator's presence;

        (3)     that the testator executed the codicil as a free and voluntary act for the purposes expressed in it;

        (4)     that each of the witnesses, in the presence of the testator and of each other, signed the codicil as witnesses;

        (5)     that the testator was of sound mind when the codicil was executed; and

762658/666390.1-HC01_DS2A

(6)     that to the best knowledge of each of the witnesses the testator was, at the time the codicil was executed, eighteen (18) or more years of age or was a member of the armed forces or of the merchant marine of the United States or its allies.

Dated: _August 4_, 2000

_Doris Levenberg_
Doris Levenberg

_Lorreena R. Maelmann_
Witness

_Lisa S. Proske_
Witness

_Andrea Greene_
Witness

4